UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY J. DOWNING,

       Plaintiff,                              No. 17-10652

v.                                             District Judge Mark A. Goldsmith
                                                     Magistrate Judge R. Steven Whalen

FORD MOTOR COMPANY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

On February 28, 2017, Plaintiff Kristy J. Downing filed a *pro se* civil complaint against Defendant Ford Motor Company ("Ford"), alleging a violation of the Sherman Act, 15 U.S.C. § 1, and two Michigan law claims for tortious interference with a business relationship. Before the Court is Defendant's Motion to Dismiss [Doc. #16], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Defendant's motion be GRANTED and that the complaint be DISMISSED WITH PREJUDICE.

                **I.    FACTS**

Ms. Downing states that she is an unemployed patent attorney. *Complaint* [Doc. #1], ¶ 7.[1] She states that her relationship with Ford began in 2000, when she clerked as a product development engineer. It was during that time that she was introduced to Bill Coughlin, the chief patent counsel for Ford. *Id.* ¶ 11. Ms. Downing subsequently attended law school, and after she graduated in 2003, Ford's engineering staff told her

---

[1] She further describes herself as "a well-accomplished US patent attorney and automotive engineer." *Id.* ¶ 10.

that they would permit her to rotate through different legal departments at Ford. She started working at Ford's in-house patent department, where Mr. Coughlin was the director. Mr. Coughlin and Ray Coppiellie referred her to the Quinn Law Group, apparently for employment. She states that the Quinn Law Group was prohibited from doing work for Ford. *Id*. ¶ 13.

After leaving Ford, Ms. Downing was later employed by Foley & Lardner in Milwaukee, Wisconsin, and ended that job in 2008. *Id*. ¶ 14. She unsuccessfully interviewed with the Brooks Cushman law firm in 2007. After leaving Foley & Lardner, she "reached out" to Mr. Coughlin "to see if he had work or employment" for her. *Id*. Coughlin arranged for his in-house team to refer work to her as a sole practitioner, and Ford gave her patent assignments from 2008 to 2013. *Id*. She states that her "solo practice began to become fairly lucrative around 2011...." *Id*. ¶ 15. At some point, Ms. Downing filed a complaint with Ford's Human Resources Department regarding allegations of sexual harassment at not only Ford's offices in Dearborn, but non-Ford entities such as Life Time Fitness in Livonia, Michigan, Washtenaw Community College's fitness center, commercial real estate that she rented in Novi, and her "own neighborhood in Westland." *Id*.

On February 22, 2012, Ms. Downing applied for two positions at the United States Patent and Trademark Office ("USPTO"), and in July of 2012, she attended a "black-tie event" on Ford's campus attended by the Director of the Patent Office. She also visited a USPTO facility in Detroit, where she claims to have been "greeted with hostility" by staff, specifically Imelda Anekew. She also alleges that a "mall-cop" named Sean McCarron "was drenched in fresh cologne smiling and seemingly attempting to flirt with me." *Id*. ¶ 17. Some time later, Ms. Downing was issued a federal disorderly conduct

infraction arising out of her visit to the USPTO office. The United States Attorney's Office dismissed the charge, and Ms. Downing later sued Ms. Anekew and Mr. McCarron. *Id*. ¶¶ 17-18.[2]

Ms. Downing states that on March 27, 2013, she notified Mr. Coughlin "and others" that she had decided to stop doing work for Ford, and closed her practice effective April 30, 2013. *Id*. ¶ 19. Mr. Coughlin agreed to be a reference if Ms. Downing sought other employment. *Id*. She alleges that over the past three years, she has applied unsuccessfully for 189 patent law positions and over 300 engineering positions. *Id*. ¶ 22. She alleges that her failure to obtain employment is the result of Mr. Coughlin "effectuating a no-poaching agreement with respect to [her] hire." *Id*. ¶ 24. She states, "He is doing so allegedly out of paranoia (or actual guilt) about employment discrimination issues, trying to force me to work as an independent contractor and not technically be considered an employee of Ford's under some of those laws." *Id*. She refers to two other female patent attorneys who she claims were "forced to work" as independent contractors rather than employees of Ford. She states that one attorney, Diana Brehob, "is female and it is believed that Mr. Coughlin is forcing Ms. Brehob to work as an independent contractor for Ford in part or in total out of fear of employment discrimination liability." *Id*. ¶ 26.[3] She alleges that Gigette Bejin, "a prior in-house patent attorney for Ford was also forced to work as a solo practitioner for Ford." *Id*. ¶

---

[2] *See Downing v. Anekew*, E.D. Mich. No. 12-15693. Mr. McCarron was a Detroit Police Officer. Ms. Downing brought claims of malicious prosecution, stalking, sex and marital status discrimination, due process, and defamation. The case was dismissed by stipulation on April 12, 2013. Ms. Downing states that the lawsuit settled. *Complaint*, ¶ 18.

[3] Ms. Downing also alleges that Ford "laid off Ms. Brehob's husband, who is also a PhD engineer, within the same year as her layoff." *Id.* It is unclear how Ms. Brehob's husband's situation is relevant to Ms. Downing's claims in this lawsuit.

27.[4]

Ms. Downing claims that during the past several years, Mr. Coughlin "has effectuated a no-poaching agreement" with respect to her, to Ms. Brehob, and to Ms. Bejin. She states, "During this period, we have all wanted to work at established law firms or organizations but Mr. Coughlin has stood in the way, forcing us to work as solo practitioners, something that, to my knowledge, is rarely ever done by Ford's patent department." *Id*. ¶ 28. She also states that Ford has hired lesser qualified male attorneys. *Id*. ¶¶ 30-32.[5]

Ms. Downing states that "over the course of the last several years" she has requested EEOC investigations "as to my non-hire on some of the over 650 job applications I have submitted." *Id*. ¶ 35. These included her requests for investigations of General Motors, Foley & Lardner, and the USPTO. *Id*. Ms. Downing states that a legal recruiter at General Motors told her she was not hired because of her lawsuit against Life Time Fitness, and for a disability suspension placed on her Wisconsin bar license. *Id*. ¶ 36. She states that in response to an EEOC investigation, Foley & Lardner stated that she was ineligible for re-hire due in part to the suspension of her Wisconsin bar license. *Id*. ¶ 37.[6] Attached to Ms. Downing's complaint as Exhibit P is an October 30, 2015 letter from

---

[4] Exhibit F to Ms. Downing's complaint is a LinkedIn profile of attorney Bejin indicating that while she was in private practice as Bejin PLC from June 2010 to April 2016, she has been employed as a patent counsel at General Motors from April, 2016 to the present.

[5] In three instances that she cites, the allegedly lesser experienced attorneys were hired by Brooks Cushman, a private law firm, not by Ford. ¶¶ 32-34.

[6] On September 23, 2013, the Sixth Circuit suspended Ms. Downing from the practice of law in that Court. *In the Matter of Kristy J. Downing*, Sixth Circuit Docket No. 13-9530; *In re Kristy J. Downing*, E.D. Mich. Docket No. 13-50985 [Doc. #4]. On January 24, 2014, this Court suspended Ms. Downing. *Id*. [Doc. #5]. This Court granted her petition for reinstatement on March 27, 2017. *Id*. [Doc. #20]. Earlier, on December

the EEOC, which summarizes Foley & Lardner's response as follows:

> "1. The respondent stated that at the time of your application to the Detroit office, the company was not hiring any lateral intellectual property associates and has not hired any since the time of your application.
>
> 2. Even if the Detroit office had been hiring a lateral intellectual property associate, the Respondent states that you still would not have been hired for a number of reasons.
>
> a. First, at the time of your application, your Wisconsin law license was suspended indefinitely and your Michigan law license was previously suspended. The Respondent would not hire a lateral associate candidate to practice law when the candidate's authorization to practice law was suspended in any stated.
>
> b. Second, your work performance prior to your resignation was unsatisfactory. Although your termination notice was marked 'eligible for rehire' that box is automatically checked when an employee voluntarily resigns and does not ensure that rehire will occur.
>
> c. Third, you 'judgment subsequent to her resignation reflects conduct unbecoming a Foley attorney (or any officer of the court) and would preclude her being rehired.' The company states their reason for this statement is that you have filed several frivolous and vexatious lawsuits against JC Penny[7], LifeTime Fitness and Judge Patrick Duggan (for which they supplied documentary support.)."

Ms. Downing states that she is currently litigating a dispute with the USPTO arising out allegations that the Office terminated an offer of employment. *See Downing v. Lee*, E.D. Mich. Docket No. 16-12994. *Id*. ¶ 38. Without addressing the merits, this Court

---

7, 2015, the Sixth Circuit reinstated Ms. Downing, noting that the State Bar of Michigan reinstated her to the practice of law on January 17, 2014. *In the Matter of Kristy J. Downing*, Sixth Circuit Docket No. 13-9530 [Doc. #10].

[7] Ms. Downing sued J.C. Penney in this Court, alleging negligence resulting in a bad haircut. *Downing v. J.C. Penney, Inc*., E.D. Mich. Docket No. 11-15015. Following a bench trial, the Honorable Gershwin A. Drain entered judgment in favor of Defendant and against Ms. Downing. *Id*. [Doc. #49 and #50].

dismissed the complaint in part and granted the Defendant's motion to transfer venue to the Eastern District of Virginia.  Ms. Downing states that USPTO's decision to rescind her hiring agreement was based on "three completely false rumors: (1) that I threatened [a] PTO employee in 2012, the one I already sued for defamation; (2) that I had been legitimately 'banned' from the Office for some period; and (3) that I had a second incident at the Detroit Office in August 2015 while going there for an interview." *Id*. ¶ 38. She states that "Mr. Coughlin must have told people at GM, Foley and the Patent Office to just straight out defame me, act oblivious to civil rights laws and/or try to embarrass me in order to excuse their participation in his no-poaching agreement." *Id*. ¶ 39.

Ms. Downing states that in November of 2015, she sold a patent and related applications to Open Invention Network ("OIN"), "for a fraction of its market value." *Id*. ¶ 40.  She alleges that Ford "was to soon become a member of OIN," and that "Mr. Coughlin used the payment of my invention royalties as an excuse to have others continue to participate in his no-poaching agreement an excess of an additional year.  Due to Ford's no poaching agreement and interference with the sale of my patent I was unable to get at least market value for the sale and I stayed unemployed for even longer causing me to spend up the royalties." *Id*.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the

requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III.   DISCUSSION
#### A.   Sherman Act Claim (Count I)

"Section 1 of the Sherman Act provides that '[e]very contract, combination in the

form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal ...." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 906 (6th Cir. 2003) (quoting 15 U.S.C. § 1) (footnote omitted). To establish a violation of § 1 of the Sherman Act, a plaintiff must show "that an agreement between two or more economic entities exists since unilateral conduct would not violate this statute." *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 270 (6th Cir. 2014). In other words, to state a claim under § 1, a plaintiff must allege (1) a contract, combination, or conspiracy between two or more entities; (2) in unreasonable restraint of trade; that (3) affects interstate commerce. *See Am. Ad Mgmt., Inc. v. GTE Corp.,* 92 F.3d 781, 788 (9th Cir.1996).

Ms. Downing alleges a conspiracy between Ford, through Mr. Coughlin, and apparently a large number of potential employers, including General Motors, law firms such as Foley & Lardner, and the USPTO. The claimed conspiracy centers on the allegation that Ford and these other entities entered into a "no-poaching agreement."

Generally, an anti-poaching agreement between two or more employers in the same industry prohibits one from hiring the employees of another. *See eg*, *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1189–90 (N.D. Cal. 2013)(Google entered into an agreement with Apple whereby they would not recruit each others senior level employees). Referring to a Department of Justice ("DOA") investigation, the Court observed that "the DOJ concluded that Defendants reached 'facially anticompetitive' agreements that 'eliminated a significant form of competition ... to the detriment of the affected employees who were likely deprived of competitively important information and access to better job opportunities.' " *Id.* at 1191. Attached to Ms. Downing's complaint as Exhibit C is an October, 2016 Federal Trade Commission

publication that states, at p.3, "Agreements among employer not to recruit certain employees or not to compete on terms of compensation are illegal." The FTC publication goes on to state:

> "An individual likely is breaking the antitrust laws if he or she...agrees with individual(s) at another company to refuse to solicit or hire that other company's employees (so-called 'no poaching' agreements)."

By its nature, a no-poaching agreement provides a benefit to both companies, in that each is ensured that valued employees remain in their employ. Ford is therefore correct that while a no-poaching agreement between *employers* to not recruit ("poach") each other's *employees* might violate § 1 by operating in restraint of trade, a no-poaching theory simply does not apply, legally or logically, to a non-employee like Ms. Downing.

More obviously, Ms. Downing has not alleged facts that would plausibly support her claim that there was a conspiracy or agreement between Ford and anyone else not to hire her. In general, conspiracy claims must be pled with some degree of specificity, and vague, conclusory allegations unsupported by material facts will not be considered sufficient to support a claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). There must be something more than a defendant's personal belief that he or she is the victim of retaliation or conspiracy. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). "In order to support a conspiracy claim, a plaintiff must allege a sufficient factual basis to establish a 'meeting of the minds' on the part of the alleged conspirators." *Burrell v. MGM Grand Casino Detroit*, 2017 WL 24813, at *5 (E.D. Mich. Jan. 3, 2017), citing and quoting *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008).

In *Bell Atlantic v. Twombley*, an antitrust case, the Supreme Court held that stating a claim under § 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and that "a conclusory allegation

of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 556-557. Finding that a bare statement of parallel conduct between two alleged conspirators, with nothing more, is insufficient to state a claim under § 1, the Court observed:

> "An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief." *Id*. at 557.

Ms. Downing's factual allegations fall far short of plausibly showing that Ford entered into an agreement or conspiracy that would support her Sherman Act claim. She worked for Ford as an engineer, and after graduating from law school in 2003, she was employed at a private law firm, the Quinn Law Group. After that, she relocated to Wisconsin, where she worked at Foley & Lardner until 2008. When she then "reached out" to Mr. Coughlin, Ford referred patent assignments to her from 2008 to 2013, and she describes her private practice as becoming "lucrative" around 2011. When she closed her practice in April of 2013, Mr. Coughlin agreed to be a reference.

One could conclude from these facts that Ford and Mr. Coughlin were inclined to help, not hinder Ms. Downing. Yet, she attributes her lack of success in seeking employment at 189 patent law positions, and more specifically at General Motors, Foley & Lardner, and the USPTO, to Mr. Coughlin "effectuating a no-poaching agreement." *Complaint*, ¶ 24. She speculates that "Mr. Coughlin must have told people at GM, Foley and the Patent Office to just straight out defame me, act oblivious to civil rights laws and/or try to embarrass me in order to excuse their participation in his no-poaching agreement." *Id*. ¶ 39. In Ms. Downing's view, Mr. Coughlin *must have* conspired with these potential employers, because why else would they not have hired her? But claims of conspiracy are not well-suited to a *res ipsa loquitor* analysis, and again, Ms. Downing

must present something more than her personal belief that she is the victim of a conspiracy. *Johnson v. Rodriguez*, 110 F.3d at 310. Ms. Downing offers no facts, beyond her own speculation, to show the who, what, or when of the claimed agreement. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)(dismissing Sherman Act claims where plaintiffs "only offer[ed] bare allegations without any reference to the 'who, what, where, when, how or why.'").

At the same time, Ms. Downing's own complaint and her exhibits–including responses to her EEOC complaints–show a number of reasons why she might have had difficulty finding employment at a law firm or at the USPTO: Her Wisconsin and Michigan law licenses were suspended; she has a history of filing what, in her prospective employers' view, are frivolous lawsuits; the USPTO claimed that she was banned from the Detroit office and had two "incidents" at the Patent Office.

To meet the standard of plausibility, a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotations marks omitted). Ms. Downing's Sherman Act claim does not meet that standard, and should be dismissed.

### B. Tortious Interference (Counts II and III)

Under Michigan law, "[t]he elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit v. Atrium Home & Health Care Servs.,*

*Inc.*, 268 Mich.App. 83, 90, 706 N.W.2d 843 (2005), citing *Badiee v. Brighton Area Schools*, 265 Mich.App. 343, 365-366, 695 N.W.2d 521 (2005).

Ms. Downing brings two claims of tortious interference with a business relationship or expectancy. In Count II of her complaint, she claims that Mr. Coughlin interfered with a job offer from the USPTO, and that he tortiously caused that offer to be withdrawn. That claim does not meet the plausibility standard of *Iqbal*.

In support of her claim of a valid business expectancy, Ms. Downing attached to her complaint as Exhibit U a letter from the USPTO *conditionally* offering her employment, contingent on review of her submission and the USPTO's review of documentation as to education, prior employment, etc.[8] While there may be a question as to whether this conditional offer demonstrates a "reasonable likelihood" of a job that would support a legitimate business expectation, as opposed to "wishful thinking," *Lucas v. Monroe County*, 203 F.3d 964, 979 (6th Cir. 2000), citing *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich.App. 361, 354 N.W.2d 341 (1984), I will assume for purposes of this motion that she has plausibly supported the first prong of the tortious interference test.

However, Ms. Downing fails the second and third prongs. She has not plausibly pled, or otherwise supported beyond speculation, that Mr. Coughlin knew that she had applied for or been conditionally offered the USPTO position. Her Exhibit T is merely her letter to the USPTO listing Mr. Coughlin as a reference. It does not indicate, nor does she plead, that Coughlin was actually contacted or that he ever spoke to her prospective employer. Further, as with her Sherman Act claim, she only states that Mr. Coughlin "must have told" people at the Patent Office to defame her. This does not state plausible

---

[8] Specifically, the letter states, in bold-face type, "**This job offer is contingent on our successful review of the SF-85P, OF-306 <u>all</u> official transcripts with conferred degree.**"

facts supporting the third prong, i.e., that Coughlin intentionally interfered with her conditional offer of employment at the USPTO. Again, this is the type of speculation that is insufficient under *Twombley* and *Iqbal* to push a claim over the line from speculation to plausibility. Indeed, Ms. Downing has pled that the USPTO's decision to terminate their offer was based on "three completely false rumors" that involved her alleged conduct *at the Patent Office*: that she had threatened (and sued) a Patent Office employee, that she had been banned from a USPTO facility, and that she engaged in a second "incident" at the Patent Office. *Complaint* ¶ 38. The USPTO did not need Mr. Coughlin to provide information as to what occurred at their own facilities, and Ms. Downing has not provided sufficient factual support that Coughlin even knew about these incidents.[9]

For these reasons, Count II is dismissible under *Iqbal*.

In Count III, Ms. Downing alleges that Ford interfered with the sale of her patent. She alleges that she sold her patent to OIN "for a fraction of its market value," even though she "had a valid business expectancy for the sale of my patent at market value based upon the brokerage agreement I signed with Mr. Ehrlickman of Transactions IP." *Complaint*, ¶ 51. First, her hope that she would get what she believed was "market value" for her patent did not create a valid business relationship or expectancy. She does not allege that she had a contract with OIN for a higher price, or even an informal understanding with OIN regarding price. "To demonstrate such a realistic expectation, plaintiffs must prove an anticipated business relationship with an identifiable class of third parties." *Lucas*, 203 F.3d at 979. Nor has she pled facts showing that there were any identifiable third parties that were willing to pay more for the patent, but did not because of Ford's alleged interference. As to the second prong, Ms. Downing has pled no

---

[9] I also note that Ms. Downing has not sued Mr. Coughlin individually.

non-speculative facts showing that Ford even had knowledge of the sale to OIN, an entity that she says Ford became a member of *after* the sale.

Finally, Ms. Downing does not allege facts showing that Ford or Mr. Coughlin took any action to depress the purchase price of her patent, or to plausibly show why they would do so. Rather, consistent with her overarching but completely speculative theme that all of her employment and financial problems are attributable to Ford and to Mr. Coughlin's no-poaching agreement, she supposes that "Mr. Coughlin used the payment of my invention royalties as an excuse to have others continue to participate in his no-poaching agreement an excess of an additional year," that "Due to Ford's no poaching agreement and interference with the sale of my patent I was unable to get at least market value for the sale," and that "[t]he sale did occur significantly under market value for the purposes of facilitating Mr. Coughlin's no poaching agreement...." *Complaint*, ¶ ¶ 40, 51.

Like Counts I and II, Count III does not state a plausible claim for relief, and should be dismissed.

## IV.  CONCLUSION

I recommend that Defendant's Motion to Dismiss [Doc. #16] be GRANTED and that the complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 5, 2018                             s/R. Steven Whalen
                                                    R. STEVEN WHALEN
                                                    U.S. MAGISTRATE JUDGE


### CERTIFICATE OF SERVICE

I  hereby certify on February 5, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on February 5, 2018.

                                                    s/Carolyn M. Ciesla
                                                    Case Manager for the
                                                    Honorable R. Steven Whalen