UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY DOWNING,

       Plaintiff,                              Case No. 17-cv-10652
                                                            Hon. Mark A. Goldsmith
vs.

FORD MOTOR CO.,

       Defendant.
_____/

## OPINION & ORDER
## (1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 23), (2) ACCEPTING THE RECOMMENDATION OF THE MAGISTRATE JUDGE (Dkt. 22), AND (3) GRANTING DEFENDANT'S MOTION TO DISMISS (Dkt. 16)

Plaintiff Kristy Downing filed this case against Defendant Ford Motor Co. ("Ford"), alleging violations of the Sherman Act, 15 U.S.C. § 1, and claims of tortious interference with business expectation. The matter was referred to Magistrate Judge Steven Whalen for all pretrial proceedings. See Order of Referral (Dkt. 9). The magistrate judge issued a Report and Recommendation ("R&R") (Dkt. 22), recommending that Ford's motion to dismiss (Dkt. 16) be granted and that the complaint be dismissed with prejudice. Downing timely filed an objection to the R&R (Dkt. 23), Ford filed a response (Dkt. 25), and Downing submitted a reply (Dkt. 26). For the reasons that follow, the Court overrules Downing's objections, adopts the magistrate judge's recommendation, grants Ford's motion to dismiss (Dkt. 16), and dismisses the case with prejudice.

### I. BACKGROUND

Downing is an unemployed patent attorney who worked with Ford in some capacity beginning in 2000. Compl. ¶¶ 7, 11 (Dkt. 1). She first clerked as a product development engineer, then worked in Ford's college graduate rotational program. Id. ¶ 11. After graduating law school

1

in 2003, she clerked in Ford's in-house patent department before being transferred to Quinn Law Group, a law firm that is "strictly prohibited from doing Ford work." Id. ¶ 13. Downing does not discuss what happened between 2003 and 2008, but alleges that in 2008, she left the law firm of Foley & Lardner and reached out to Ford's chief intellectual patent ("IP") counsel, Bill Coughlin, regarding employment opportunities. Id. ¶ 14. Coughlin instructed his in-house counsel team to provide her with work as a solo practitioner. Id.

Downing alleges that she experienced sexual harassment at different "places of public accommodation" during her time as a solo practitioner. Id. ¶ 15. These places included Life Time Fitness, LA Fitness in Livonia, Washtenaw Community College's fitness center, Ford's office facilities in Dearborn, Downing's neighborhood in Westland, and in commercial real estate Downing rented in Novi, Michigan. Id. Downing filed a lawsuit against Life Time Fitness, Downing v. Lifetime Fitness, No. 2:10-cv-11037 (E.D. Mich.). Id.

In February 2012, she applied for two positions with the U.S. Patent and Trademark Office ("USPTO"), and alleges that she was the "best qualified" applicant for both positions. Id. ¶ 16. In July 2012, she visited the USPTO's new satellite office in Detroit. Id. ¶ 17. Downing alleges that the USPTO staff treated her with "hostility"; one employee questioned her and followed her around, while a "mall-cop" attempted to flirt with her. Id. Six weeks after the event, Downing was served with a ticket for disorderly conduct based on her visit. Id. ¶ 18. She attempted to contact the patent office to tell her side of the story, but no one ever responded. Id. The charges against her were eventually dismissed. Id.

Downing decided to stop working as a solo practitioner for Ford in April 2013. Id. ¶ 19. She informed Coughlin that she would try to find patent work in Washington, D.C. and also informed him that if he would like her to work for one of Ford's "provider firms," she would be

2

willing to do so. Id. He agreed to be a reference for her if she sought future employment. Id. However, an attorney working for Ford's in-house patent department told Downing that Ray Coppiellie, a Ford patent attorney, had told the attorney that Downing "was no longer practicing patent law." Id. ¶ 20.

Downing faced difficulty in finding work since leaving Ford in 2013. She applied to the District of Columbia bar in 2013, but she alleges that David Kelley, a member of Ford's in-house patent team, delayed in verifying her past employment to the National Conference of Bar Examiners. Id. ¶ 21. Downing has applied for work at the USPTO, private law firms, IP firms, and with her previous legal employers, Foley & Lardner and Quinn Law Group, all to no avail. Id. ¶ 22. She also unsuccessfully applied to engineering positions that do not require a law degree with various car manufacturers, such as Toyota and General Motors. Id.

Eventually, Downing claims that she realized that Coughlin effected a "no-poaching" agreement with respect to her hire. Id. ¶ 24. She alleges that Coughlin has done so because he would like to force her to work as an independent contractor for Ford, but not to be a Ford employee, so as to be immune from any discrimination claims. Id.

Downing claims that Coughlin has done the exact same thing to two out of five other women that she knows to have worked in-house at Ford, but never to any men. Id. In 2008, Coughlin laid off two men and two women who had worked as in-house counsel. Id. ¶ 25. The two men now work for law firms, but the two women, Diana Brehob and Gigette Bejin, have "struggled profusely" and have been "forced to work as solo practitioners essentially doing only Ford work." Id. Downing further alleges that Coughlin has been hiring and training less-qualified male attorneys – either by hiring them himself or by having law firms such as Dykema Gossett or Brooks Kushman hire them – rather than rehiring her, Brehob, or Bejin. Id. ¶¶ 30-34.

3

Downing requested Equal Employment Opportunity investigations at General Motors, Foley and Lardner, and the USPTO to determine why she was not hired. Id. ¶ 35. She claimed that the responses included either a "fabricated story" that she had allegedly disgraced herself, or referred to "protected activity" that she had engaged in (i.e., filing civil rights lawsuits or her Wisconsin bar license suspension due to disability). Id. ¶¶ 35-37. Specifically, General Motors stated it did not hire her because of her lawsuit against Life Time Fitness and because her Wisconsin bar license was suspended; Foley & Lardner stated that it did not hire her because she "filed several frivolous and vexatious lawsuits against JC Penny, Life Time Fitness and Judge Patrick Duggan," and because of the suspension of her Wisconsin bar license. Id. Downing claims that these reasons are "pretext" for participating in Ford's no-poaching agreement. Id. ¶ 37. Downing further asserts that an employment agreement she had with the USPTO was unlawfully terminated in 2016; the "reason" for this was based on "three completely false rumors." Id. ¶ 38. Coughlin was listed as a reference for this position. Id.

Downing also alleges that in 2015, she attempted to sell a patent (the "Patent") which was ultimately purchased in November 2015 "for a fraction of its market value" by Open Invention Network ("OIN"). Id. ¶ 40. She claims that Ford "was to soon become a member" of OIN, and that Coughlin used the payment of her invention royalties "as an excuse to have others continue to participate in his no-poaching agreement" for an additional year. Id.

Downing filed the instant complaint on February 28, 2017, alleging that Ford (i) violated the Sherman Act, 15 U.S.C. § 1, by being the "ringleader" in a gender-based "no-poaching agreement"; (ii) tortuously interfered with her employment at the USPTO; and (iii) tortuously interfered with her sale of the Patent. Ford filed a motion to dismiss all counts (Dkt. 17) on April 7, 2017, which Magistrate Judge Whalen recommended granting.

## II. STANDARD OF REVIEW

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any arguments made for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

## III. ANALYSIS

### a. Objection to the Facts

Downing first objects to the magistrate judge's portrayal of the facts. Pl. Obj. at 2 (Dkt. 23). She claims that it was error for the magistrate judge to (i) overlook the fact that less-qualified men were hired by Ford or Brooks Kushman, rather than Downing or two other female patent attorneys; and (ii) state that Downing alleged a reason for the USPTO to rescind her job offer.

The Court overrules Downing's objection. Magistrate Judge Whalen correctly recited the allegations from Downing's complaint regarding the hiring of "lesser qualified male attorneys," R&R at 4. Downing takes issue with the fact that the magistrate judge stated that Brooks Kushman is "a private law firm, not [] Ford," R&R at 4 n. 3, but she does not claim that this statement was not true. She simply argues that this phrasing "implies that Ford had nothing to do with BrooksKusman's [sic] hiring decisions[.]" Pl. Obj. at 3. Further, the magistrate judge's rephrasing of the USPTO's statement regarding its decision to rescind her hiring agreement is not error. Downing apparently objects because the R&R stated that "Ms. Downing states that the USPTO's decision to rescind her hiring agreement was based on 'three completely false rumors,'" R&R at 6, but she had alleged that this was not the real reason that the USPTO rescinded the agreement. Essentially, while Downing admits that this is what the USPTO told her, she does not believe that this is the true reason she was rejected. But the fact that the magistrate judge did not make this distinction clear is not sufficient basis to reject the R&R. Even if the R&R had recited these two facts in the precise manner Downing wanted, it would not change the outcome, as discussed further below.

### b. Objection to the dismissal of the Sherman Act claim

Downing's second objection is that the R&R fails to consider conspiracy-setting allegations and construes facts in Ford's favor. Pl. Obj. at 4. She claims that it was error for Magistrate Judge Whalen to conclude that her antitrust claim only pleads parallel activity, not a conspiracy, because he ignored her "myriad of other allegations" in support of a conspiracy. Id. at 6. She also argues that the magistrate judge's case law is distinguishable and her cited cases are more instructive. Id. at 19.

This objection is overruled. Downing essentially faults Magistrate Judge Whalen not for failing to recognize her allegations, but for failing to draw the same conclusions that she does from seemingly-innocuous facts. She first argues that she did in fact lay out the "who, what, where, when, why, and how" of the alleged conspiracy in her response to the motion to dismiss. Pl. Obj. at 7. But the citations Downing made to the complaint in her response, ¶¶ 13, 20-21, and 35-40, show that she alleged that (i) after working for Ford for several months in 2003, she was sent to Quinn Law Group, which was "strictly prohibited from doing Ford work"; (ii) Ray Coppiellie told another Ford employee that Downing was no longer practicing patent law; (iii) David Kelley delayed in responding to National Conference of Bar Examiners; (iv) General Motors, Foley & Lardner, and the USPTO did not hire her and provided purported reasons why; and (v) she received less than market value for the sale of the Patent, and Ford became a member of OIN. This is not "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted).

Second, Downing argues that the R&R does not mention the statement from Ray Coppiellie that she was no longer practicing patent law. Pl. Obj. at 8. Downing argues that this is an "<u>overt</u> threat" that must be considered. Id. at 9 (emphasis in original). But this statement is not, as Downing contends, a "smoking gun" admission of conspiracy by Ford – it shows only that a Ford employee, upon learning that Downing was no longer planning to work with Ford, believed that she was no longer going to practice patent law. In the case relied upon by Downing, <u>In re Polyurethane Foam Antitrust Litigation</u>, 799 F. Supp. 2d. 777, 782 (N.D. Ohio 2011), the court described as "smoking gun" allegations "specific admissions from Defendant Vitafoam employees

7

to the DOJ and the CBC that directly support the existence of a conspiratorial agreement . . . [which] name competitor employees with whom they engaged in conspiratorial discussions and conduct." Coppiellie's alleged statement is a far cry from such an admission, and it is harmless that the R&R did not specifically mention it. Similarly, it is harmless that the magistrate judge did not mention the fact that David Kelley did not respond to the bar examiner's requests to verify Downing's past employment with Ford. This is not, as Downing claims, an "overtly restrictive allegation," Pl. Obj. at 9, but rather an allegation that no more supports a conspiracy than innocuous delay. See Twombly, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) . . .") (emphasis added).

Downing next argues that Magistrate Judge Whalen failed to treat her allegations as true because he assumed that Coughlin had good intentions in acting as a reference for Downing. Pl. Obj. at 9. However, he did no such thing – he simply noted that "[o]ne could conclude from these facts that Ford and Mr. Coughlin were inclined to help, not hinder Ms. Downing." R&R at 10. This is an acknowledgement that Downing's allegations do not plausibly suggest a conspiracy. Downing also claims that the R&R "overlooks the oddity of Plaintiff having a positive reference from a Fortune 50 [sic] company like Ford and still having significant trouble landing employment." Pl. Obj. at 10. But Downing's complaint itself resolves this "oddity," as Magistrate Judge Whalen observed – her Wisconsin and Michigan law licenses have been suspended, she has filed what her potential employers view as frivolous lawsuits, and the USPTO believes she engaged in disorderly conduct at their Detroit office.

Fifth, Downing argues that the R&R does not sufficiently address her allegations that Coughlin hired five less-qualified males while placing Downing, Bejin, and Brehob in solo firms.

8

Pl. Obj. at 11. Even taking Downing's allegations as true, the fact that Ford (or other companies that work closely with Ford, like Brooks Kushman) did not hire these three women does not make it plausible that Ford had entered into a conspiracy to prevent other companies from hiring them.

Downing's next argument is that Magistrate Judge Whalen inappropriately considered "other explanations" argued by Ford for Downing's unemployment, such as the explanations provided by General Motors and Foley & Lardner, even though these explanations "do not make sense legally." Pl. Obj. at 12. She claims that he should have "tak[en] Plaintiff's allegations about those 'explanations' as true," i.e., he should have concluded that the proffered reasons for denying Downing employment were false. Id. However, a court "need not accept as true legal conclusions or unwarranted factual inferences[.]" D'Ambrosio v. Marino, 747 F.3d 378, 383 (6th Cir. 2014) (emphasis added).

Further, Downing herself put forth the reasons that General Motors, Foley & Lardner, and the USPTO gave for denying her employment in her complaint, and the magistrate judge appropriately considered them in determining whether it was plausible that Ford entered into an agreement or conspiracy that would violate the Sherman Act. The explanations provided by Downing's potential employers as to why she was not hired do in fact make it less plausible that Ford was engaged in such an antitrust conspiracy. The explanations provided are valid reasons why an employer would not hire an individual – they are not "as random as saying that Plaintiff was not able to obtain employment because she rode a blue bicycle as opposed to a red one," Pl. Obj. at 13. Additionally, the magistrate judge reached the conclusion that Downing had failed to plead a conspiracy in violation of the Sherman Act even before considering the explanations offered by General Motors or Foley & Lardner. See R&R at 10 ("Ms. Downing's factual

allegations fall far short of plausibly showing that Ford entered into an agreement or conspiracy that would support her Sherman Act claim.").

Finally, Downing argues that the magistrate judge's case law is distinguishable and the cases that she cited are more applicable.[1] She argues that reliance on Twombly and Iqbal was erroneous, and that Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield, 552 F.3d 430 (6th Cir. 2008), and Burrell v. MGM Grand Casino, 2017 WL 24813 (E.D. Mich. Jan. 3, 2017), are distinguishable from her case. The magistrate judge did not err in relying on Twombly and Iqbal, as "the plausibility pleading standard set forth in Twombly and Iqbal" is properly used in cases involving a 12(b)(6) motion to dismiss. Sam Han v. Univ. of Dayton, 541 F. App'x 622, 626 (6th Cir. 2013).

Downing's reason for distinguishing Total Benefits is that she has pled the who, what, where, when, why, and how of a conspiracy, and Total Benefits dismissed the case where these were not alleged. Pl. Obj. at 20. As discussed above, Downing has not adequately pled the details of a conspiracy.

---

[1] Downing does not state in her objection what cases she believes to be more applicable, but her reply states that these include Roman v. Cessna Aircraft, 55 F.3d 542 (10th Cir. 1995), Radovich v. Nat'l Football League, 352 U.S. 445 (1957), and In re Animation Workers Antitrust Litig., 123 F. Supp. 3d 1175 (N.D. Cal. 2015). Pl. Reply at 4 n. 9 (Dkt. 26). She argues that '[t]hese cases and their co-defendants further illustrate how one need not be a current employee to have § 1 standing." Id. However, the magistrate judge did not rest his dismissal of the Sherman Act claim on the grounds that a no-poaching agreement would not apply to a non-employee like Downing, and neither does this Court. Additionally, these cases do not help Downing, because they all contain plausible, non-speculative allegations of a conspiracy, which she has failed to put forth. See Radovich, 352 U.S. at 1957 (after plaintiff received an offer from a new employer, his previous employer "advised that Radovich was blacklisted and any affiliated club signing him would suffer severe penalties"); Roman, 55 F.3d at 543 (plaintiff was "told that Cessna would not offer him employment solely because of an agreement between Cessna and Boeing"); In re Animation Workers, 123 F. Supp. 3d at 1182 (noting specific emails that refer to agreements not to poach others' employees).

Finally, Downing argues that the magistrate judge incorrectly relied on Burrell, which involved a conspiracy under 42 U.S.C. § 1985, regarding a "meeting of the minds" requirement for a conspiracy claim, and notes that she does not need to plead a motivating factor for the conspiracy. Id. But the magistrate judge said nothing about a need to plead a motivating factor for the conspiracy, and the "meeting of the minds" requirement has been stated in § 1 Sherman Act cases. See Twombly, 550 U.S. at 557 ("A statement of parallel conduct . . . needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.").

Downing also claims that Gutierrez v. Lynch, 826 F.2d 1534 (6th Cir. 1987), which the magistrate judge cited for the proposition that conspiracy claims must be pled with some degree of specificity, "is not a conspiracy case at all so whatever 'specificity' is needed for such claims this case will not instruct." Pl. Obj. at 20 n. 9. Gutierrez did involve a claim for conspiracy.

In a footnote, Downing also argues that the R&R was deficient for failing to consider her 37-page Rule 56(d) affidavit, which she attached to her response to the motion to dismiss. Pl. Obj. at 6 n. 4. She requests that the Court now consider her affidavit. Pl. Reply at 4 n. 8 (Dkt. 26). Although Rule 12(d) provides that "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), the Court "retains the discretion to consider or exclude such extrinsic evidence presented with a Rule 12(b) motion." Peoples v. Bank of Am., No. 11-2863, 2012 WL 601777, at *4 (W.D. Tenn. Feb. 22, 2012); see also Wright & Miller § 1366 ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . ."). The Court declines to consider Downing's extrinsic evidence here,

11

because the affidavit is essentially just an opportunity for Downing to include an additional 37 pages of argument in response to the motion to dismiss.

### c. Objection to the dismissal of the tortious interference with job offer claim

Downing's third objection is that the magistrate judge erred in finding that she did not plead with specificity that Coughlin knew of the job offer she had received from the USPTO or that he had interfered with the job offer. Pl. Obj. at 21.

To state a claim for tortious interference with a business relationship or expectancy, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." Health Call of Detroit v. Atrium Home & Health Care Servs., Inc., 706 N.W. 2d 843, 849 (Mich. Ct. App. 2005). Downing argues that she alleged that Coughlin was a reference on a reference list provided to the USPTO, and therefore it is reasonable to assume that he was contacted by the USPTO. Pl. Obj. at 21. She also claims that she alleged interference, pointing to her allegation that "Mr. Coughlin must have told people at . . . the Patent Office to just straight out defame me, act oblivious to civil rights laws, and/or try to embarrass me in order to excuse their participation in his no-poaching agreement." Compl. ¶ 39.

Downing does not claim that Coughlin was in fact contacted by the USPTO; she simply says that "[i]t is very probable Coughlin was contacted and told about Plaintiff's offer before it issued, though Plaintiff need only show its plausibility." Pl. Obj. at 21-22. But even if the Court draws this inference in Downing's favor, it requires yet another leap to conclude that Coughlin interfered with Downing's relationship with the USPTO. The R&R correctly concluded that the

allegation that Coughlin "must have" told people at the USPTO to defame her is "the type of speculation that is insufficient under Twombly and Iqbal to push a claim over the line from speculation to plausibility." R&R at 12-13. See Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."). Downing's objection is overruled.[2]

### d. Objection to the dismissal of the tortious interference with patent brokerage agreement claim

Finally, Downing objects to the Magistrate Judge's conclusion that she did not adequately plead that Downing had a reasonable business expectancy in her patent, that Coughlin knew of her patent sale, or that he interfered with the sale. Pl. Obj. at 23. This final objection is overruled. Downing does not plead facts that make it plausible that Ford interfered with the sale of the Patent. She alleges that the Patent was purchased in November 2015, and Ford was listed as having "recently joined the OIN community" on September 6, 2016. See Compl. ¶ 40; OIN Website Homepage Screenshot, Ex. R. to Compl. (Dkt. 1-1). From this, she concludes that Coughlin somehow influenced the price that OIN paid for the Patent, though she does not plausibly explain how or why he might have done so. Again, this sort of speculation is insufficient to state a claim. This claim was properly dismissed.

---

[2] Downing suggests that she could amend her complaint to plead with specificity that Coughlin knew about the job offer or that he interfered with it. Pl. Obj. at 21. She also claims that she could amend the complaint to plead the elements of her second tortious interference with business expectancy claim with specificity as well. Id. at 23. But she then states that "[f]urther fact development is needed to determine by whom and when Coughlin was contacted by . . . the Patent Office, and who [sic] Coughlin may have contacted[,]" id. at 22, and "further fact investigation is needed to determine how many of the other identified third parties Coughlin contacted to discourage their bidding on Plaintiff's patent . . . [and] to assess Coughlin's familiarity with Plaintiff's broker, who was central to the sale," id. at 25. Thus, it appears that Downing would be unable to put forth facts in support of her theory, and amendment would result in nothing more than "conclusory allegations or legal conclusions masquerading as factual allegations," which "will not suffice" to survive a motion to dismiss. Terry v. Tyson Farms, Inc., 604 F.3d 272, 275-276 (6th Cir. 2010).

## IV. CONCLUSION

For the reasons set forth above, the Court accepts the Magistrate Judge's recommendation dated February 5, 2018 (Dkt. 22); overrules Downing's objections thereto (Dkt. 23); grants Ford's motion to dismiss (Dkt. 16); and dismisses Downing's claims with prejudice.

SO ORDERED.

Dated: March 22, 2018  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 22, 2018.

s/Karri Sandusky  
Case Manager